UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Deanna S. Fosness,<br><br>    Plaintiff,<br><br>v.<br><br>Minnesota Sex Offender Program,<br>Minnesota Department of Human Services,<br>And Commisioner Jodi Harpstead of the<br>Minnesota Department of Human Services,<br><br>    Defendants. | CASE FILE NO.: 20-CV-01511<br><br>COMPLAINT<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

**To:** Defendants named above and their respective attorneys. Plaintiff Deanna Fosness through her attorney, **Trautmann Martin Law PLLC,** 619 South 10th Street, Suite 201, Minneapolis, MN 55404, states and alleges a Complaint against the above-named Defendants as follows:

## I.  INTRODUCTION

1. Because of Defendants' illegal refusal to provide her with a reasonable accommodation, Plaintiff Fosness suffered personally, professionally, and financially. Ms. Fosness was forced to leave the most personally and professionally fulfilling position she has ever had. She was deprived of the opportunity to advance in one of the most unique employment opportunities in the state of Minnesota. She has been stripped of the

opportunity to retire within the next six years, along with the loss of significant benefits, including vacation time, sick time, and medical leave.

2.      This action is brought to secure relief for the violations of Plaintiff's right to not be discriminated against by a state government employer on the basis of a disability under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, subd. 2(3).

## II.     PARTIES

3.      Deanna S. Fosness (hereinafter "Plaintiff" or "Ms. Fosness") is an individual who resides in the City of Carlton, County of Carlton, State of Minnesota.

4.      The Minnesota Sex Offender Program (hereinafter "MSOP") is a treatment program of the Minnesota Department of Human Services, has over 500 employees, and is located in St. Peter, MN.

5.      The Department of Human Services (hereinafter "DHS") is one of the largest Minnesota state agencies and is located in Saint Paul, Minnesota. It provides health care, economic assistance, and other services to the state including implementing and overseeing the MSOP.

6.      Commissioner Jodi Harpstead currently leads the DHS.

7.      Hereinafter, MSOP, DHS, and Commissioner Harsptead will collectively be referred to as "Defendants."

8. At all times relevant hereto, Plaintiff and Defendant MSOP were "employee" and "employer" respectively, within the meaning of Title I of the Americans with Disabilities Act (hereinafter the "ADA"), 42 U.S.C. § 121111(5).

9. At all times relevant hereto, Plaintiff and Defendant MSOP were "employee" and "employer" respectively, within the meaning of the Minnesota Human Rights Act (hereinafter the "MHRA"), Minn. Stat. § 363A.03, subds. 15 and 16.

10. At all times relevant hereto, Plaintiff worked at MSOP's facility located at 100 Freeman Drive, St. Peter, MN 56082.

### III. JURISDICTION AND VENUE

11. The United States District Court for the District of Minnesota has jurisdiction over this proceeding because some claims concern issues of federal law, giving this Court jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

12. Venue is proper in this Court under 28 U.S.C. § 1391, subds. (b)(1) and (2), as some Defendants reside in the District in which this Court is located, and some or all of the events giving rise to the claims herein occurred in this District.

### IV. FACTUAL BACKGROUND

**Employment at MSOP**

13. Plaintiff is a licensed teacher in the State of Minnesota (License No. 428017).

14. Plaintiff was hired as a Special Teacher for Defendant MSOP in April 2015.

15. MSOP is the only treatment center of its kind in Minnesota. MSOP staff observe and monitor clients in all aspects of daily living, including group therapy.

16. The St. Peter site location of the MSOP houses clients progressing in their treatment towards release and those in need of alternative programming.

17. Plaintiff's job duties included teaching MSOP clients in group and individual tutoring sessions. She taught math and reading and other subjects as needed.

18. Plaintiff's work hours were from 7:30 a.m. to 4:00 p.m. on Monday through Friday.

19. Ms. Fosness lived a 45- to 60-minute drive away from MSOP. Shortly after being hired at MSOP, Ms. Fosness and her husband sold their home and purchased another home in St. Peter, MN so she could be closer to work.

**Disability: Narcolepsy**

20. Plaintiff has struggled with constant fatigue for many years. This made the drive to work more strenuous on Plaintiff. Also, the fatigue would occasionally cause Ms. Fosness to be no more than 15 minutes late to work at MSOP.

21. Before the end of 2015, Plaintiff was diagnosed with narcolepsy. It is a chronic neurological disorder that affects the brain's ability to control sleep-wake cycles. It has no cure.

22. Ms. Fosness' illness makes it very difficult for her to wake up when she is already asleep. Sometimes she needs to be awoken by someone. She requires 10-16 hours of sleep each night, even with medication. (Ms. Fosness does not suffer from cataplexy, a condition in which a person involuntarily falls asleep.)

23. If Ms. Fosness arrived late, she would make up any lost time by "flexing that time." In other words, if she were ten minutes late, then she would make up those ten minutes late by staying an additional ten minutes after her scheduled shift.

24. Plaintiff's job performance was not affected by her tardiness. She was not late to or unprepared for her classes.

25. Ms. Fosness' practice of "flexing" any lost time at the end of her shifts did not cause any issues with her supervisor, Karen Dalluge.

**Request for Reasonable Accommodation**

26. Although there is no cure, narcolepsy symptoms can be managed through medications and lifestyle modifications.

27. Ms. Fosness's doctor recommended that she work four 10-hour shifts each week instead of five 8.5-hour shifts. This schedule would allow her to get sufficient sleep in the middle of the week.

28. Her doctor also recommended that she start within one hour of her usual start time in the modified schedule to accommodate her inconsistent sleep schedule. This would also allow her to continue flexing the time she may have missed at the beginning of a shift.

29. Plaintiff notified her supervisor, Dalluge, of her diagnosis and the doctor's recommendation to modify her work schedule.

**Union Involvement**

30. Ms. Fosness is a member of the State Residential Schools Education Association ("SRESEA").

31. After several months of asking and not receiving any response from Ms. Dalluge regarding whether an accommodation could be made, Plaintiff reported the situation to her union representative.

32. A "meet and confer" meeting was held. Plaintiff, the union president, Ms. Dalluge, and an MSOP Human Resources representative were all in attendance.

33. After the meeting, Ms. Dalluge refused to respond to the union representative or to Plaintiff regarding an accommodation.

34. Eventually, Ms. Dalluge explicitly denied Plaintiff a reasonable accommodation of modifying her schedule to four 10-hour shifts in order to help Plaintiff better manage the symptoms of her disability.

**Discriminatory Treatment**

35. Later, Ms. Dalluge offered Plaintiff to work four 10.5-hour shifts with a 30-minute working lunch break.

36. Plaintiff began following the modified 10.5-hour shift schedule.

37. The 10.5-hour shift did not allow Plaintiff to flex any of the time she may be late and add it to the end of her shift.

38. Plaintiff was required to use accrued sick or vacation time, and then eventually FMLA leave to make up for the minutes she was late at the beginning of her shift.

39. Plaintiff felt this schedule discriminatory and punitive because several other MSOP employees in other departments and at the other MSOP site in Moose Lake, MN have been permitted an alternative schedule of 10-hour shifts and a lunch break.

40. To the best of Plaintiff's knowledge, there are MSOP employees who are permitted a modified schedule of four 10-hour shifts with a break without it having any significant burden on the employer.

41. Additionally, to the best of Plaintiff's knowledge, there are employees with a modified schedule who did not request the schedule based on a need for a reasonable accommodation due to a disability.

**EEOC Complaint**

42. As a result of the discriminatory treatment and failure to be reasonably accommodated, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against MSOP.

43. The EEOC recommended that Plaintiff submit a doctor's note to MSOP explaining her diagnosis and a recommended modified schedule in order to obtain the accommodation.

44. On July 18, 2017, the EEOC issued a Charge of Discrimination in Plaintiff's favor.

**Retaliation/Reprisal**

45. Prior to the EEOC filing, there were no concerns from MSOP regarding Ms. Fosness's tardiness or her flexing the time she was late. After Ms. Fosness filed a complaint with the EEOC, Ms. Dalluge told her she was no longer permitted to make up the time she was late.

46. After Plaintiff filed a complaint with the EEOC, Ms. Dalluge's attitude and availability towards Plaintiff changed. She scrutinized and micromanaged Fosness closely.

Ms. Dalluge stopped replying to Plaintiff's general questions and concerns regarding their work.

47. Ms. Dalluge also started denying reasonable requests that she often previously granted.

48. Prior to the EEOC filing, Ms. Fosness was encouraged to participate in professional development opportunities. Plaintiff was permitted to leave one hour early on Monday nights to attend classes. Plaintiff was working towards additional degrees at Minnesota State University Mankato ("MSU"). After Plaintiff filed the EEOC complaint, Ms. Dalluge prohibited Ms. Fosness from attending any professional development opportunities.

49. One of the courses Plaintiff was taking at MSU was "Brain Based Learning." Ms. Dalluge explicitly stated to plaintiff that she could no longer have the time to attend the course because it was not relevant to her work at MSOP.

50. On the contrary, the "Brain Based Learning" course was directly relevant to Ms. Fosness' job duties at MSOP. MSOP is a treatment facility for sex offenders. Ms. Fosness' work specifically required her to teach individuals with potentially harmed psyches.

51. Ms. Dalluge also prohibited Plaintiff from attending classes required to maintain her teaching license, which was a requirement of her position at MSOP.

52. Plaintiff previously attended a two-day training conference for teachers as a part of the 100 paid professional development hours she was allotted each year. In 2018, Ms. Dalluge refused to let Plaintiff use the allotted hours for the second day of training.

53. Ms. Dalluge denied Plaintiff the ability to use unpaid time to continue the classes for her professional development.

54. In February 2019, Ms. Fosness submitted a Grievance Form to her union representative, Chad Schmidt, regarding Ms. Dalluge's refusal to permit Plaintiff to continue her professional development.

55. Ms. Dalluge denied Plaintiff the ability to use unpaid time to continue the classes for her professional development.

56. To continue her professional development, Plaintiff was required to use her accrued vacation time.

57. Ms. Fosness is a war veteran. Ms. Dalluge refused to give Plaintiff permission to attend a veteran's event by failing to respond to Plaintff's request for time off to attend. Plaintiff missed the event.

**Termination and Right to Sue**

58. Ms. Fosness amended her complaint to the EEOC citing discrimination on the basis of her disability and retaliation.

59. Ms. Dalluge responded to the complaint stating that the modified schedule for Plaintiff was an undue hardship to the MSOP and could not be granted.

60. Ms. Fosness submitted multiple statements from other employees at MSOP attesting to the requested modified schedule not being an undue hardship on MSOP based on the nature of the work and the needs of the clients.

61. On March 14, 2019, Plaintiff was constructively discharged from her position with MSOP due to MSOP's refusal to fully comply with the doctor's prescribed schedule and continued retaliation against Plaintiff for asking for an accommodation.

62. On April 26, 2019, Plaintiff appealed a Determination of Ineligibility for unemployment benefits issued on April 11, 2019.

63. On April 30, 2019, the Unemployment Judge determined the appeal in Plaintiff's favor citing that she was eligible for benefits because she had good cause to quit for reasons caused by the employer.

64. Additionally, on April 30, 2019, the EEOC issued a Charge of Discrimination in Plaintiff's favor.

65. On March 6, 2020, the EEOC issued a letter to Plaintiff stating that it would not be able to conciliate the charge against the MSOP and would be discontinuing its administrative proceeding.

66. The Department of Justice issued a Right to Sue under Title I of the ADA to Plaintiff, dated April 3, 2020. She did not receive this notice until April 8, 2020.

**Damages**

67. Defendants did not make a reasonable accommodation for Plaintiff.

68. Plaintiff had to sell her home in St. Peter, MN so the parties could move closer to Plaintiff's husband's job. Plaintiff bought a new home in Carlton, MN.

69. Plaintiff's marriage was substantially harmed by her employment at MSOP, the discrimination and retaliation she suffered there, the loss of her employment, the

necessary sale of their home in St. Peter, and the move to Carlton, MN. Plaintiff and her husband nearly filed for divorce.

70. There are no equivalent positions in substance available to Ms. Fosness in Carlton, MN, where she now resides. There is only one sex offender program in Minnesota. The clients at the MSOP site in Moose Lake, MN require different services and treatment than what Plaintiff was doing at the MSOP site in St. Peter. Ms. Fosness has lost a very unique position.

71. As a direct and proximate result of Defendants' violations of Title I of the ADA and the MHRA, Plaintiff has suffered, and continues to suffer loss of wages and benefits, and emotional distress. Additionally, Plaintiff has incurred attorneys' fees and expenses and other serious damages.

72. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to judgment against Defendants in a reasonable amount, which should be trebled, a civil fine, and her reasonable costs and attorney's fees pursuant to Minn. Stat. §§ 363A.33 and 363A.29, subd. 4(a).

## V. CAUSES OF ACTION

### COUNT I

**Failure to Accommodate in Violation of Title I of the ADA 42 U.S.C. § 12112**

73. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

74. Title I of the ADA, 42 U.S.C. § 12112, prohibits a covered entity from discriminating against a qualified employee on the basis of disability "in regard to job application procedures, the hiring, advancement, or discharge, compensation, job training, and other terms, conditions, and privileges of employment."

75. Defendants MSOP and DHS are covered entities within the meaning of 42 U.S.C. § 12111(2).

76. A "disability" is a physical or mental impairment that substantially limits one or more major life activities of the individual with the disability. 42 U.S.C. § 12102 (1).

77. Narcolepsy is a mental impairment with physical effects that limits Plaintiff's major life activities including not being able to wake herself up and experiencing substantial fatigue throughout the week.

78. A qualified employee is a "qualified individual" if she is someone who can, *with or without* a reasonable accommodation, perform the essential functions of her job. 42 U.S.C. § 12111 (8) (emphasis added).

79. Under Title I of the ADA, a reasonable accommodation includes job modified work schedules for individuals with disabilities. 42 U.S.C. § 12111 (9)(A).

80. Ms. Fosness is a qualified employee who has a disability of narcolepsy and requires a reasonable accommodation of a modified schedule in the workplace.

81. Defendants did not provide a reasonable accommodation to Plaintiff.

82. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 12112, Plaintiff has suffered, and continues to suffer, loss of wages and benefits.

Additionally, Plaintiff has incurred attorneys' fees and expenses and other serious damages.

## COUNT II

**Failure to Accommodate in Violation of the MHRA Minn. Stat. § 363A.08**

83. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

84. The MHRA provides that making a reasonable accommodation means taking steps to accommodate the "known physical or mental limitations of a qualified disabled person." Minn. Stat. § 363A.08.

85. A reasonable accommodation under the Minnesota Human Rights Act "may include but is not limited to…job restructuring, modified work schedules…etc." *Id*.

86. The MHRA states that a "qualified disabled person" is someone "who, with reasonable accommodation" can perform the essential functions required of all applications for the job in question." Minn. Stat. § 363A.03.

87. Plaintiff was a qualified disabled person within the meaning of the MHRA because she was still able to perform the essential functions of her job with a reasonable accommodation.

88. Defendants did not make a reasonable accommodation for Plaintiff.

89. As a direct and proximate result of Defendants' violations of Minn. Stat. § 363A.08, subd.6, Plaintiff has suffered, and continues to suffer, loss of wages and benefits

and emotional distress. Additionally, Plaintiff has incurred attorneys' fees and expenses and other serious damages.

90. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to judgment against Defendants in a reasonable amount, which should be trebled, a civil fine, and her reasonable costs and attorney's fees pursuant to Minn. Stat. §§ 363A.33 and 363A.29, subd. 4(a).

## COUNT III

### Retaliation in Violation of 42 U.S.C. § 12203

91. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

92. The ADA prohibits discrimination against an individual based on having "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" pursuant to the ADA. 42 U.S.C. § 12203(a).

93. Plaintiff engaged in statutorily protected conduct when she requested a reasonable accommodation of a modified work schedule to help her manage her narcolepsy.

94. Defendants retaliated against Plaintiff by refusing to grant reasonable requests that had been previously granted. Defendants forced Plaintiff to use accrued vacation time, sick time, and FMLA leave to make up time she was late or wanted to participate in professional development opportunities, even though employees were allotted 100 paid professional development hours each year.

95. The aforementioned conduct by Defendants constitutes retaliation in violation of the ADA. 42 U.S.C. § 12203(a).

96. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, emotional distress, loss of wages and benefits. Moreover, Plaintiff has incurred attorneys' fees and expenses and other serious damages.

## COUNT IV

### Reprisal in Violation of Minn. Stat. § 363A.15

97. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

98. The MHRA states that:

> It is an unfair discriminatory practice for any individual who participated in the alleged discrimination as a[n] ... employer ... or employee or agent thereof to intentionally engage in any reprisal against any person because that person has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

Minn. Stat. § 363A.15.

99. "A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment." Minn. Stat. § 363A.15.

100. It is a reprisal for an employer to "depart from any customary employment practice." *Id.*

101. Plaintiff engaged in statutorily protected conduct when she requested a reasonable accommodation of a modified work schedule to help her manage her narcolepsy.

102. Defendants retaliated against Plaintiff by refusing to grant reasonable requests that had been previously granted. Defendants forced Plaintiff to use accrued vacation time, sick time, and FMLA leave to make up time she was late or wanted to

participate in professional development opportunities, even though employees were allotted 100 paid professional development hours each year.

103. The aforementioned conduct by Defendants constitutes a reprisal in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.15.

104. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, emotional distress, loss of wages and benefits. Moreover, Plaintiff has incurred attorneys' fees and expenses and other serious damages.

105. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to a judgment against Defendants in a reasonable amount, which should be trebled, a civil fine, and reasonable costs and attorney's fees pursuant to Minn. Stat. §§ 363A.33 and 363A.29, subd. 4(a).

## VI. REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Deanna Fosness prays for and respectfully requests that the Court enter judgment in her favor, providing that:

A. As to Count I and III of the Complaint, entering judgment against Defendants and awarding Plaintiff all available relief under Title I of the ADA, 42 U.S.C. § 12112.

B. As to Counts II and IV of the Complaint, entering judgment against Defendants and awarding Plaintiff all available relief under the Minnesota Human Rights Act, Minn. Stat. § 363A.01, *et seq*;

C. Trebling of damages under the Minnesota Human Rights Act, pursuant to Minn. Stat. § 363A.29;

D. An award of damages arising from loss of past and future income, benefits, emotional distress, moving costs and other damages;

E.  An award of punitive damages, as permitted by the Minnesota Human Rights Act; and

F.  Plaintiff's attorneys' fees, costs, and disbursements occurred herein and as allowed under Minn. Stat. §§ 176.82 and 363A.33; and

G.  Further and other relief as the Court deems just and equitable.

Dated: July 2, 2020

TRAUTMANN MARTIN LAW PLLC

By: /s/ Graham M. Martin
Graham M. Martin (#0388050)
Amarita K. Singh (#0395794)
619 South 10th Street, Suite 201
Minneapolis, Minnesota 55404
Telephone: (612) 564-0347
gmartin@trautlaw.com
asingh@trautlaw.com

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: July 2, 2020

**TRAUTMANN MARTIN LAW PLLC**

By: /s/ Graham M. Martin
Graham M. Martin (#0388050)
Amarita K. Singh (#0395794)
619 South 10th Street, Suite 201
Minneapolis, Minnesota 55404
Telephone: (612) 564-0347
gmartin@trautlaw.com
asingh@trautlaw.com