UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DEANNA S. FOSNESS,

           Plaintiff,

v.

MINNESOTA SEX OFFENDER PROGRAM, MINNESOTA DEPARTMENT OF HUMAN SERVICES, and JODI HARPSTEAD, *Commissioner of the Minnesota Department of Human Services*,

           Defendants.

Civil No. 20-1511 (JRT/LIB)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

---

Amarita Singh and Graham M. Martin, **TRAUTMANN MARTIN LAW PLLC**, 619 South Tenth Street, Suite 201, Minneapolis, MN 55404, for plaintiff.

Cicely R. Miltich, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, Saint Paul, MN 55101, for defendants.

Before initiating this action, Plaintiff Deanna Fosness had already filed two charges with the United States Equal Employment Opportunity Commission ("EEOC"): the first, as amended, alleging that Defendants refused to reasonably accommodate her disability, narcolepsy, and then retaliated against her for requesting such an accommodation, thus violating Titles I and V of the Americans with Disabilities Act (the "ADA"); and, the second, alleging that, because of Defendants' continued refusal to accommodate her disability and their ongoing retaliatory acts, she was forced to resign (constructive discharge), thus

violating Title V of the ADA. Fosness has now filed this Complaint, alleging that Defendants' actions have violated Titles I and V of the ADA and Minnesota Statutes §§ 363A.08, 363A.15.

A private party can bring a civil action against a public sector employer, such as Defendants, for alleged violations of the ADA, but only after the United States Department of Justice ("DOJ") has issued a Notice of Right to Sue, which it has with respect to Fosness's first amended EEOC charge but not as to the second. As such, Defendants move the Court to dismiss the second charge's claim of constructive discharge pursuant to Rule 12(b)(6), arguing that Fosness has not administratively exhausted and, thus, cannot plausibly allege this claim.

Because the second charge only alleges retaliatory acts by Defendant that are identical to those already alleged in the first amended and now exhausted charge, and because Fosness was allegedly forced to resign solely because of these retaliatory acts, the Court finds that all of her claims have been administratively exhausted. Accordingly, the Court will deny Defendants' Motion to Dismiss.

## BACKGROUND

**I. FACTUAL BACKGROUND**

   **A. The Parties**

Fosness was hired as a Special Teacher at the Minnesota Sex Offender Program ("MSOP"), a program of the Minnesota Department of Human Services, in April 2015.

(Am. Compl. ¶¶ 4, 14, July 7, 2020, Docket No. 5.)  Her work included teaching MSOP clients in individual and group tutoring sessions in math, reading, and other subjects as needed.  (*Id.* ¶ 17.)  Her work hours were from 7:30am to 4pm, Monday through Friday.  (*Id.* ¶ 18.)

Before the end of 2015, Fosness was diagnosed with narcolepsy, which is a chronic disorder that affects the brain's ability to control sleep-wake cycles, and for which there is no cure.  (*Id.* ¶ 21.)  Her narcolepsy makes it very difficult for her to awaken, which sometimes requires another's help, and she needs to sleep 10–16 hours each night.  (*Id.* ¶ 22.)  Fosness notified her supervisor, Karen Dalluge, about her diagnosis.  (*Id.* ¶ 29.)

As a result of the fatigue caused by her narcolepsy, Fosness would occasionally arrive approximately 15 minutes late to work.  (*Id.* ¶ 20.)  If she arrived late, then she would make up lost time by "flexing that time," which meant that she would work an additional amount of time at the end of the shift to offset the amount by which she was late at the beginning.  (*Id.* ¶ 23.)  Her job performance was not affected by tardiness, nor was she late to or unprepared for her classes.  (*Id.* ¶ 24.)  Initially, Dalluge did not have any issues with Fosness flexing worktime.  (*Id.* ¶ 25.)

Fosness's doctor then recommended that she work four 10-hour shifts per week instead of five 8.5-hour shifts, as this would allow her to get more sleep in the middle of the week.  (*Id.* ¶ 27.)  Her doctor also recommended that her start time be flexible, within an hour of her usual start time, to accommodate her inconsistent sleep schedule—in

-3-

effect, to continue to allow her to flex time. (*Id.* ¶ 28.) Fosness notified Dalluge about her doctor's recommended work schedule. (*Id.* ¶ 29.)

After several months of receiving no response from Dalluge, Fosness reported the situation to her union representative. (*Id.* ¶ 31.) A meet and confer was held with Fosness, Dalluge, the union president, and a MSOP Human Resources representative in attendance. (*Id.* ¶ 32.) After the meeting, Dalluge initially did not respond to Fosness or her union representative regarding an accommodation. (*Id.* ¶ 33.) Later, Dalluge explicitly denied Fosness's request to work four 10-hour shifts and flex time, as the doctor had recommended. (*See id.* ¶ 34.)

Dalluge, instead, offered to modify Fosness's schedule as such: four 10.5-hour shifts per week, with a 30-minute working lunch break, but with no ability to flex time. (*Id.* ¶¶ 35, 37.) Fosness began following this modified schedule, during which she had to use accrued sick or vacation time and, eventually, accrued Family and Medical Leave Act ("FMLA") time if she arrived tardy for a shift. (*Id.* ¶¶ 36, 38.)

Fosness believed that other MSOP employees were able to work 10-hour shifts with a non-working lunch break, and that this was not a significant burden on MSOP, so she felt that her modified schedule was both discriminatory and punitive. (*Id.* ¶¶ 39–40.) Thus, she filed a Charge of Discrimination with EEOC on July 17, 2017 (the "2017 Charge").

(Decl. of Cicely R. Miltich ("Miltich Decl.") ¶ 2, Ex. A at 1, Sept. 11, 2020, Docket No. 13-1.)[1]

On the 2017 Charge, Fosness checked "Disability" as the basis of discrimination. (*Id.*) For the particulars, Fosness stated that she "was subjected to differential treatment when I was denied a reasonable accommodation for my medical condition," that she "was told [an accommodation] would be an undue hardship," and that she believed that she had "been discriminated against on the basis of my disability in violation of Title I of the [ADA]." (*Id.*)

After Fosness filed the 2017 Charge, Dalluge began to scrutinize and micromanage her, and Dalluge no longer replied to her questions or work-related concerns. (Am. Compl. ¶ 46.) Also, prior to filing the 2017 Charge, Fosness had been able to leave an hour early on Mondays to attend university classes for professional development. (*Id.* ¶ 48.) Now, however, Dalluge denied Fosness professional development opportunities, whether leaving early for university classes or attending classes required to maintain her

---

[1] Both parties filed declarations and exhibits. Generally, if the Court considers matters outside the pleadings, then a motion to dismiss must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Here, however, the EEOC charges submitted by Defendants are matters within the public record and, as such, can be considered by the Court. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802 (8th Cir. 2002). Additionally, Defendants submitted official notifications from EEOC and DOJ apprising Fosness of various developments concerning the charges and her right to sue, the contents of which are alleged in the Amended Complaint and whose authenticity neither party questions, so they may be considered as well. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003). The Court will not, however, consider an email submitted by Fosness from her attorney to DOJ or Fosness's declaration. *See, e.g.*, *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011) (finding that the district court erred in not converting the motion after considering information in letters to counsel and the plaintiff's affidavit).

teaching license. (*Id.* ¶¶ 48, 51.) Dalluge also refused to allow Fosness to use any of her paid professional development hours to attend the second day of a two-day teachers' conference until the union president informed Dalluge that the employment contract explicitly allowed Fosness to claim such hours for the conference. (*Id.* ¶ 52.) For other professional development opportunities, Fosness had to use accrued vacation time. (*Id.* ¶ 55.) Fosness was also unable to attend a veteran's event. (*Id.* ¶ 56.)

As a result of these experiences, Fosness amended the 2017 Charge on August 10, 2018 (the "Amended 2017 Charge"). (Miltich Decl. ¶ 3, Ex. B at 1, Sept. 11, 2020, Docket No. 13-1.) She now checked "Retaliation" and "Disability" for the bases of discrimination. (*Id.*) She also provided more particulars, stating:

> [i]n retaliation for submitting a formal accommodation request, which was approved on/about September 7, 2017, my supervisor has subjected me to different terms and conditions of employment through denying flexible start times, denied professional development hours previously approved, denied training requests, and having my FMLA reevaluated which has led to unapproved absences. The retaliation is continuing to this day.

(*Id.*) Fosness also stated that she had "been discriminated against on the basis of my disability and/or in retaliation for engaging in a protected activity in violation of Titles I and V of the [ADA]." (*Id.*)

Dalluge responded to the Amended 2017 Charge, stating that the modified schedule proposed by Fosness would be an undue hardship on MSOP and could not be granted. (Am. Compl. ¶ 58.) Fosness then submitted multiple statements from MSOP

-6-

employees, averring that her requested work schedule modifications would not result in undue hardship to MSOP. (*Id.* ¶ 59.)

Then, on March 14, 2019, Fosness was forced to resign, as MSOP continued to refuse to allow her to work as directed by her doctor and continued to retaliate against her for asking for such an accommodation. (*See id.* ¶ 60.) As a result, Fosness filed a second EEOC Charge of Discrimination on April 30, 2019 (the "2019 Charge"). (Miltich Decl. ¶ 4, Ex. C at 1, Sept. 11, 2020, Docket No. 13-1.)

On the 2019 Charge, Fosness listed "Retaliation" as the basis of discrimination. (*Id.*) For the particulars, Fosness stated that "[d]uring my employment with [MSOP] I filed a charge of discrimination. The EEOC found cause. [MSOP] failed to correct the issue in a timely manner, allowing the retaliation to continue. I was forced to resign . . . due to the hostile work environment." (*Id.*) She further stated that she had "been discriminated against in retaliation for participating in a protected activity in violation of Title V of the [ADA]." (*Id.*)

### B. Notice of Right to Sue

With respect to the Amended 2017 Charge, on March 6, 2020, EEOC informed Fosness that it had been unable to conciliate the charge against MSOP and had discontinued its administrative processing. (Am. Compl. ¶ 64.) DOJ issued a Notice of Right to Sue on April 3, 2020, which notified Fosness that DOJ would not file suit against MSOP with respect to the Amended 2017 Charge. (Miltich Decl. ¶ 6, Ex. E at 1, Sept. 11,

2020, Docket No. 13-1.)  As such, DOJ informed Fosness that she had the right to institute a civil action against MSOP.  (*Id.*)

With respect to the 2019 Charge, on March 6, 2020, EEOC notified Fosness that it was forwarding her request for a Notice of Right to Sue to DOJ, as DOJ must issue such notices when public sector employers are involved.  (Miltich Decl. ¶ 5, Ex. D at 1, Sept. 11, 2020, Docket No. 13-1.)  At the motion hearing, Fosness disclosed that DOJ has not yet decided whether to initiate an action on its own or, alternatively, issue a Notice of Right to Sue.

## II.  PROCEDURAL BACKGROUND

Fosness filed her action on July 2, 2020.  (Compl., July 2, 2020, Docket No. 1.)  On July 7, 2020, she filed an Amended Complaint, alleging four Counts: 1) failure to accommodate in violation of Title I of the ADA, 2) failure to accommodate in violation of Minnesota Statute § 363A.08, 3) retaliation in violation of Title V of the ADA, and 4) reprisal in violation of Minnesota Statute § 363A.15.  (Am. Compl. ¶¶ 72–104.)  Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6), asking the Court to dismiss any claims that are based on the 2019 Charge, as they have not been administratively exhausted.  (Defs.' Mot. Dismiss, Sept. 11, 2020, Docket No. 9.)

**DISCUSSION**

I. **MOTION TO DISMISS**

   A. **Standard of Review**

Motions to dismiss asserting that a plaintiff failed to exhaust administrative remedies are appropriately considered through the "prism of Rule 12(b)(6)." *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011). In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor. *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

Although the Court accepts the complaint's factual allegations as true, and in the light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or mere "labels and conclusions or a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678 (quotation omitted). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Before seeking redress in federal court for workplace discrimination, a complaining employee must first exhaust all administrative procedures. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994); *see also Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018) (noting that the procedures mandated for Title VII claims pursuant to 42 U.S.C. § 2000e-5 apply equally to ADA claims). "To exhaust administrative remedies, an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *Williams*, 21 F.3d at 222 (citing § 2000e-5); *see also* 42 U.S.C. § 2000e-5(f)(1) (establishing that DOJ issues such notices when the respondent is a "government, governmental agency, or political subdivision"). Completing this two-step process will constitute exhaustion with respect to allegations set forth in an EEOC charge and any "allegations contained in the judicial complaint that are like or reasonably related to substance of the charges timely brought before the EEOC." *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (quotation omitted).

As such, a judicial complaint need not mirror the administrative charges; instead, "the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination." *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988) (quotation omitted); *see also Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015) (noting that an

administrative charge will be liberally construed for exhaustion purposes). Accordingly, conclusory allegations of discrimination made in an EEOC charge, but only later fleshed out in the judicial complaint, will not satisfy the exhaustion requirement. *Faibisch*, 304 F.3d at 803. Additionally, if only discrimination is alleged in the EEOC charge, and the complaint then alleges retaliation alongside discrimination, the exhaustion requirement will not be satisfied. *See Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998).

However, where the judicial complaint alleges "subsequent retaliatory acts [] of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature," then allegations concerning such subsequent acts will be considered exhausted as well. *See Wedow v. City of Kansas City*, 442 F.3d 661, 674 (8th Cir. 2006). That is, allegations of subsequent and ongoing retaliatory acts, if identical in character to those alleged in an exhausted EEOC charge, can be timely brought in a judicial complaint. *See id.*

### C. Analysis

With this precedent in mind, the question to be considered by the Court is whether the constructive discharge allegation made in the Amended Complaint is reasonably related to the retaliatory acts already alleged in the Amended 2017 Charge, now exhausted, and/or subsequent and ongoing retaliatory acts identical in character to those

alleged in this Charge.[2] If so, then the constructive discharge allegation would fall within the scope of the Eighth Circuit's exhaustion exception and, thus, could be timely brought here.

The Amended 2017 Charge includes the following allegations: (1) Fosness was subjected to differential treatment when denied a reasonable accommodation for her disability; (2) in retaliation for submitting her formal accommodation request, her supervisor subjected her to different terms and conditions of employment by denying her flexible starting times, professional development hours, training requests, and by having her FMLA status reevaluated, which led to unapproved absences; and (3) that the retaliation is continuing to this day.  Further, on the Amended 2017 Charge, Fosness checked two boxes to indicate the basis of alleged discrimination, one for "Disability" and another for "Retaliation."  Finally, Fosness checked the box to indicate "Continuing Action."

---

[2] Inexplicably, the parties' briefs counterpose the 2017 Charge and the 2019 Charge, thereby skipping over the Amended 2017 Charge.  However, EEOC regulations allow amendments to "clarify and amplify allegations" or allege "additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge," which "will relate back to the date when the original charge was first received."  29 C.F.R. § 1601.12.  As such, a complaining employee can amend an original charge to broaden the scope of the EEOC investigation and, as a result, the permissive sweep of any judicial complaint.  *See, e.g.*, *Parisi v. Boeing Co.,* 400 F.3d 583, 586 (8th Cir. 2005) (stating that a plaintiff could have amended his original charge to add and thereby exhaust subsequently arising allegations); *see also Wedow*, 442 F.3d at 672 (noting that many courts require a new or amended EEOC charge for subsequent incidents of retaliation or discrimination).

The Amended Complaint contains the same allegations as above, plus the following: (1) Dalluge's attitude and availability changed after Fosness initially filed the 2017 Charge but before she amended it; (2) Dalluge refused to allow Fosness time off to attend a veteran's event, which also occurred before Fosness amended the Charge; (3) Fosness was constructively discharged on March 14, 2019, roughly seven months after she had amended the 2017 Charge and almost a year before EEOC finished its administrative processing and passed the matter on to DOJ; and (4) that Fosness was forced to resign because of Defendants' continued refusal to accommodate her doctor's prescribed schedule and their continued retaliation against her for asking for such an accommodation.

First, with respect to allegations concerning specific acts occurring before amendments were made to the 2017 Charge, they fall within the time period of discrimination noted on the Amended 2017 Charge and, thus, would have been investigated by EEOC, especially because Fosness checked boxes for both disability and retaliation and alleged violations of both Title I (disability-based discrimination) and Title V (retaliation) of the ADA. *Cf. Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 849 (8th Cir. 2012) (finding that two separate charges would be necessary when "[a plaintiff] checked the boxes for 'race' and 'sex,' but did not check the 'retaliation' box"). As such, the Court finds that Fosness has exhausted administrative remedies with respect to these allegations.

Second, with respect to allegations concerning Defendants' retaliatory acts occurring after amendments were made to the 2017 Charge, nothing new is added in terms of specifics. Rather, the Amended Complaint alleges only that MSOP continued to retaliate against Fosness, which, as fleshed out at the motion hearing,[3] involved acts identical to those already alleged in the Amended 2017 Charge: that Fosness was denied the ability to use professional development hours, was unpaid for training hours, and was denied approval for FMLA absences. Further, the Amended 2017 Charge indicated that Defendants' retaliatory acts were of an ongoing and continuing nature, which broadens the permissible scope of the judicial complaint to sweep in subsequent retaliatory acts of like kind. *See Wedow*, 442 F.3d at 673–74. Therefore, the Court finds that Fosness has exhausted administrative remedies with respect to these allegations.

Finally, with respect to allegations concerning her constructive discharge, the retaliatory acts alleged to have forced Fosness to resign are either those alleged in the Amended 2017 Charge or those of identical character alleged in the Amended Complaint. Further, only these adverse acts, and no others, are alleged to have created the intolerable working conditions that resulted in Fosness's constructive discharge. *Cf. Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 623 (8th Cir. 2019) (finding that a

---

[3] At this hearing, Fosness's counsel suggested that she would be unable to pursue all the Amended Complaint's claims if the Court found that the 2019 Charge was not exhausted. The Court disagrees, as it will find that all allegations, including that of being constructively discharged, can be timely brought because Fosness has exhausted the Amended 2017 Charge.

plaintiff who failed to allege the adverse acts that forced him to resign could not administratively exhaust his constructive discharge allegation).  As such, the Court finds that Fosness has exhausted administrative remedies with respect to these allegations.

In sum, the Court finds that all allegations made in the Amended Complaint have been administratively exhausted and that all its claims can be timely brought.  Accordingly, the Court will deny Defendants' Motion to Dismiss.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 9] is **DENIED.**

DATED:  February 23, 2021
at Minneapolis, Minnesota.

                                              JOHN R. TUNHEIM
                                              Chief Judge
                                    United States District Court