UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DEANNA S. FOSNESS, | |
| Plaintiff, | Civil No. 20-1511 (JRT/LIB) |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| MINNESOTA SEX OFFEDER PROGRAM, MINNESOTA DEPERTMENT OF HUMAN SERVICES, and JODI HARPSTEAD, *Commissioner of the Minnesota Department of Human Services*, | |
| Defendants. | |

---

Amarita Singh, Graham M. Martin, Jennifer Moore, and Kristin C. Hendrick, **TRAUTMANN MARTIN LAW, PLLC**, 619 South Tenth Street, Suite 201, Minneapolis, MN 55404, for plaintiff.

Amanda E. Prutzman, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Saint Paul, MN 55101, for defendants.

Plaintiff Deanna S. Fosness was a Special Teacher with the Minnesota Sex Offender Program ("MSOP") who suffers from narcolepsy and needed certain accommodations to do her job. Fosness brings failure-to-accommodate and retaliation/reprisal claims under both federal and state law against the MSOP, the Minnesota Department of Human Services ("MDHS"), and Jodi Harpstead, the MDHS Commissioner in her official capacity. Fosness argues that she never received the full extent of the accommodations requested

and that the MSOP retaliated against her for submitting charges with the Equal Employment Opportunity Commission ("EEOC") related to her disability.

The Defendants now move for summary judgement. The Court will grant summary judgement as to the failure to accommodate claims because the ability to flex her time was not part of Fosness's accommodation request. The Court will also grant summary judgement on the retaliation claims because Defendants provide legitimate reasons for their actions and Fosness does not present evidence of pretext.

## BACKGROUND

### I. FACTS

#### A. Fosness's Disability

Fosness was hired as a Special Teacher at the MSOP in April 2015. (Decl. of Deanna S. Fosness Opp. Mot. to Dismiss ("Fosness Decl.") ¶ 5, Oct. 2, 2020, Docket No. 17.) Her work included teaching MSOP clients in group and individual tutoring sessions. (*Id.*) The instructions included adult basic education, GED preparation, and high school diploma credit. (Decl. of Jason Marisam, Ex. B, at 80, Sept. 30, 2022, Docket No. 105-1.)

Fosness's work hours were originally from 7:30 a.m. to 4 p.m., Monday through Friday. (Fosness Decl. ¶ 6.) However, Fosness testified at her deposition that her schedule changed over time and that start times varied from 7:30 to 8:00 a.m. and the ending times varied from 4:00 p.m. to 4:30 p.m. (Marisam Decl. Ex. A ("Fosness Dep."), 61:5–13, at 17, Sept. 30, 2022, Docket No. 105-1.)

Before the end of 2015, Fosness was diagnosed with narcolepsy, which is a chronic disorder that affects the brain's ability to control sleep-wake cycles, for which there is no cure. (Fosness Decl. ¶ 7.) Her narcolepsy makes it very difficult for her to wake up, which sometimes requires another's help, and she needs to sleep 10–16 hours each night. (*Id.* ¶ 8.)

As a result of the fatigue caused by her narcolepsy, Fosness would occasionally arrive late to work, but if she did, she would make up lost time by "flexing that time," which meant that she would work later into the day. (*Id.* ¶ 9.) Fosness admits that no one explicitly told her this was an acceptable practice, but she was also not told that she could not "flex" her time in this matter. (Fosness Dep. 64:2–21, at 17.) Additionally, Fosness claims that prior to her diagnosis, her supervisor—Karen Dalluge—"never had any issues" with Fosness flexing work time. (Fosness Decl. ¶ 9.)

Fosness's doctor recommended that she work four 10-hour shifts per week instead of five 8.5-hour shifts, as this would allow her to get more sleep in the middle of the week. (*Id.* ¶ 10.) Her doctor also recommended that her start time be between 7:30 and 8:30 in the morning. (Marisam Decl. Ex. B, at 94.) Fosness informed Dalluge of her diagnosis and requested an accommodation. (Fosness Decl. ¶ 11.) After a meet and confer between the MSOP, Fosness's union, and Fosness, the MSOP initially denied the accommodation. (*Id.* ¶¶ 12–13.)

### B. First EEOC Complaint and Accommodation

Fosness filed a Charge of Discrimination with the EEOC on July 18, 2017 (the "2017 Charge"), alleging that the MSOP did not accommodate her disability. (Marisam Decl. Ex. B, at 95.) On September 5, 2017, the MSOP granted Fosness's requested accommodation. (Marisam Decl. Ex. B, at 93.) Her new schedule called for a total of 10.5 hours because her union contract required a 30-minute non-working lunch. (*See* 1st Decl. of Karen Dalluge ("1st Dalluge Decl.") ¶ 8, Sep. 30, 2022, Docket No. 104.) Thus, her new hours were from 7:30 a.m. to 6:00 p.m. Monday, Tuesday, Thursday, and Friday.

Morning classes for MSOP clients began at 8:00 a.m. (Dalluge Decl. ¶ 5.) Besides Fosness, the MSOP had only one other Special Teacher providing educational services to clients. (*Id.*) The second teacher's hours were from 7:45 a.m. to 4:15 p.m., Monday through Friday. (*Id.*) The MSOP did not allow either teacher to flex from their set scheduled times. (*Id.*) Clients were not available for classes between 4:30 p.m. and 6:30 p.m. because they had their supper meal, followed by a mandatory count in their units. (*Id.* ¶ 6.)

### C. Alleged Retaliation

Fosness claims that after filing her first EEOC complaint, Dalluge's attitude towards her changed and that she was denied requests that would previously be approved, such as attending professional development trainings. (Fosness Dep. 91:6–93:18, at 24–25.) Fosness claims that prior to her EEOC complaint, she never had to submit formal requests. (Fosness Dep. 93:19–95:25, at 25.)

In October 2017, Fosness was denied her request to attend the Department of Homeland Security's "L4" leadership program. (Dalluge Decl. ¶ 10.) The MSOP claims the L4 request was denied because "it was too time consuming and would have required [Fosness] to miss classes she taught to MSOP clients." (*Id.*) Fosness was also denied a request to attend a brain-based learning class after the MSOP determined it did not fit with their curriculum. (Dalluge Decl. ¶ 9.)

Fosness also claims that Dalluge interfered with required trainings, including with the second day of a two-day training conference for teachers that was required as part of the 100 paid professional development hours she was allotted each year. (Fosness Decl. ¶ 19.) Fosness declared that Dalluge only approved of the second day once the union president became involved. (*Id.*) Similarly, Fosness claims that Dalluge refused to give permission to attend a veteran's event by failing to respond to her email requesting time off to attend, causing Fosness to miss the event. (*Id.* ¶ 20.)

On August 10, 2018, Fosness amended her pending EEOC charge to assert that the MSOP had retaliated by "denying flexible start times . . . professional development hours previously approved . . . training requests" and for having "FMLA reevaluated which has led to unapproved absences." (Marisam Decl. Ex. B, at 96.)

D. **Resignation and Second EEOC Complaint**

On February 7, 2019, Fosness was denied a three-month professional development leave from June 1 through August 31, 2019, to attend summer classes at Minnesota State University, Mankato, where Fosness was pursuing her Ph.D. (Marisam Decl., Ex. B, at

115.) The rationale provided by the MSOP was that the denial was based on staffing needs and the impact on client programing. (*Id.*) Fosness resigned her position two weeks later on February 27, 2019. (*Id.* at 141–42.)

Fosness filed another EEOC Charge of Discrimination on April 30, 2019 (the "2019 Charge"). On the 2019 Charge form, Fosness listed only "Retaliation" as the basis of discrimination. (Decl. of Cicely Miltich ("Miltich Decl."), Ex. C, at 3, Sept. 11, 2020, Docket No. 13-1.) For the particulars, Fosness stated that "[d]uring my employment with [the MSOP] I filed a charge of discrimination. The EEOC found cause. [The MSOP] failed to correct the issue in a timely manner, allowing the retaliation to continue. I was forced to resign . . . due to the hostile work environment." (*Id.*) She further stated that she had "been discriminated against in retaliation for participating in a protected activity in violation of Title V of the [ADA]." (*Id.*)

After resigning, Fosness applied for unemployment benefits from the Minnesota Department of Employment and Economic Development, and an Unemployment Law Judge ("ULJ") concluded that Fosness could receive unemployment benefits, finding that she quit her job "because of a good reason caused by the employer." (Decl. of Graham M. Martin ("Martin Decl."), Ex. H, at 32, Oct. 21, 2022, Docket No. 108-1.)

### E. EEOC Determinations

With respect to the 2017 Charge, the DOJ issued a Notice of Right to Sue on April 3, 2020, which notified Fosness that EEOC conciliation was unsuccessful, and that the DOJ would not file suit against MSOP with respect to this charge. (Miltich Decl., Ex. E, at 6,

Sept. 11, 2020, Docket No. 13-1.) As such, the DOJ informed Fosness that she had the right to institute a civil action against the MSOP under Title I of the ADA. (*Id.*)

With respect to the 2019 Charge, the EEOC notified Fosness on March 6, 2020, that it was forwarding her request for a Notice of Right to Sue to the DOJ, as the DOJ must issue notices concerning public sector employers. (Decl. of Amarita K. Singh, Ex. C, at 23, Oct. 2, 2020, Docket No. 18.)

## II.   PROCEDURAL BACKGROUND

Fosness initiated this action in July 2020. (*See generally* Compl., July 2, 2020, Docket No. 1.) She subsequently amended her complaint. (*See generally* Am. Compl., July 7, 2020, Docket No. 5.) Fosness brought four claims against the MSOP, the MDHS, and Jodi Harpstead, the Commissioner of the MDHS, in her official capacity: (1) failure to accommodate in violation of Title I of the ADA 42 U.S.C. § 12112, (2) failure to accommodate in violation of the Minnesota Human Rights Act ("MHRA"), (3) retaliation in violation of Title V of the ADA 42 U.S.C. § 12203, and (4) reprisal in violation of Minn. Stat. § 363A.15. (Am. Compl. ¶¶ 7, 73–104.)

The Defendants filed a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6), which the Court denied. *Fosness v. Minnesota Sex Offender Program*, No. 20-1511, 2021 WL 698731, at *1 (D. Minn. Feb. 23, 2021). The Defendants argued that Fosness had not exhausted her administrative remedies in relation to her constructive discharge claim, which she raised in the 2019 Charge, but the Court concluded the allegation was sufficiently related to the 2017 Charge. *Id.* at *5–6. After the close of

discovery, the Defendants moved for summary judgment. (Defs.' Mot. Summ. J., Sept. 30, 2022, Docket No. 101.)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

**II.    ANALYSIS**

Although Fosness asserts four claims, they center on two theories of liability under federal and state law: (1) failure to accommodate her disability,[1] and (2) retaliation/reprisal.[2]

**A.  Failure to Accommodate**

The crux of Fosness's failure-to-accommodate claims is that although Defendants accommodated her schedule with a four-day work week, they did not accommodate her disability fully because they did not allow her to flex her time.

Failure to accommodate claims under the ADA and the MHRA are evaluated under the familiar *McDonnell Douglas* burden shifting formula. *Burchett v. Target Corp.*, 340 F.3d 510, 516 (8th Cir. 2003). Under this framework, the plaintiff must establish a prima facie case of discrimination by demonstrating that (1) she has a disability, (2) that she is qualified to perform the essential functions of the job with or without reasonable

---

[1] Fosness seemingly abandoned her failure to accommodate claims (under federal and state law) in her summary judgment briefing, as she fails to point to any record evidence that shows Defendants did not accommodate her disability. Nevertheless, because there is enough on the record to support her position, the Court will analyze the claim.

[2] The Defendants, for the first time in this litigation, raised Eleventh Amendment immunity from suit in federal court for the state—but not federal—claims in their summary judgment briefing. Though the Court would be inclined to find the State waived its Eleventh Amendment immunity through litigation conduct by neglecting to raise immunity in either its answer or at the motion to dismiss stage, the Court will not address the Eleventh Amendment immunity issue because the Plaintiff would still not prevail at the summary judgment stage. *See Lors v. Dean*, 746 F.3d 857, 864 (8th Cir. 2014) ("[W]e need not determine whether Title V of the ADA was a valid abrogation of sovereign immunity if the record on summary judgment establishes that Lors has no valid Title V claim against the defendants.")

accommodation, and (3) that she suffered an adverse employment action as a result of her disability. *Id.* If she establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 517.

As part of the second requirement, if an accommodation is necessary to perform the job, then the plaintiff must "make a facial showing that reasonable accommodation is possible." *Id.* Employers are required to "reasonably accommodate an employee's disability and engage in an interactive process to identify potential accommodations that could overcome her limitations." *Id.* (citing *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002)). If the employee makes a showing that reasonable accommodation is possible, then the burden shifts to the employer to show that it had a legitimate nondiscriminatory reason not to provide the accommodation. *Id.* "The ultimate question of whether the employer discriminated by failing to provide the accommodation is then for the fact finder to determine." *Id.*

Defendants advance two arguments: (1) Fosness did not request flex time as part of her accommodation and she was granted the four-day work week she did request and (2) the flex time request was not reasonable. Defendants argue they had a legitimate reason to deny the request because allowing Fosness to arrive later than 7:30 a.m. would cut into the prep time needed for the 8 a.m. class. Defendants also emphasize that flexing her time to later in the day did not make sense because no classes were offered then. Nevertheless, Fosness did not specifically request flex time as part of her accommodation.

Fosness argues that her Doctor's recommendation included the ability to flex time. Besides the four-day work week, the doctor also mentioned that the start time should be within 7:30 and 8:30 a.m. However, Fosness's argument misses the mark because the doctor's mention of a start time **within** that range is not the same as allowing her to arrive **anytime within** that timeframe and allowing her to extend her workday as needed. Moreover, the classes at the MSOP started at 8 a.m. and the MSOP required her to arrive at 7:30 a.m., which is within the time requested by her doctor. Therefore, because the request did not specify that she needed the ability to flex her time, the Court finds Fosness did not request that accommodation. As such, the Court grants summary judgment to Defendants on the federal and state accommodation claims.

### B. Retaliation

To prove her retaliation claims, Fosness must show either direct evidence of discrimination or create an inference of it under the *McDonnell Douglas* burden-shifting framework.³ *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014). Fosness does not claim to have direct evidence of retaliation so she must establish a prima facie case of retaliation by showing (1) that she engaged in protected activity, (2) that an adverse employment

---

³ Claims of discrimination under the MHRA are analyzed under the same standard, using the same federal case law. *Said v. Mayo Clinic*, 44 F.4th 1142, 1147 n.6 (8th Cir. 2022) (citing *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012) (applying McDonnell Douglas burden-shifting framework to MHRA discrimination claim); *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) ("In construing the MHRA, we apply law developed in federal cases arising under Title VII of the 1964 Civil Rights Act.")).

action was taken against her, and (3) that a causal connection exists. *Id.* at 867. There is no dispute that Fosness engaged in protected activity. But Defendants argue that Fosness cannot establish a prima facie case of retaliation because none of the allegedly retaliatory actions are in fact adverse actions and because there is no evidence of causation.

### 1. Adverse Actions and Defendant's Reasons

The Supreme Court has stated that a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). Additionally, the Court stated that an individual is not protected from all retaliation, but rather from retaliation that produces injury or harm. *Id.* at 67. This is an objective standard, but the Court emphasized that "any given act of retaliation will often depend upon the particular circumstances," and that "[c]ontext matters." *Id.* at 69.

Fosness proposes the following as adverse actions: denial of flex time, the different approach to professional development requests, and constructive discharge. The Court takes each in turn.

#### a. Lack of Flex Time

Fosness argues that prior to her EEOC complaint she was allowed to flex her schedule and that her accommodation request included a flexible start time. She argues that denial of a flex schedule was an adverse action because it required her to take accrued leave under the Family and Medical Leave

Act ("FMLA"). However, Defendants point out that neither of the Special Teachers were allowed to flex their time, which shows that the lack of flex time was neither an adverse action nor connected to her EEOC demand. Additionally, Fosness only had to use FMLA seventeen times over two years. Finally, Fosness admits that no one told her that she could flex her time prior to her EEOC charge.

Even if the Court were to find that this constitutes an adverse action, Defendants have provided a seemingly legitimate reason for the denial: that she was not granted flex time because it did not make sense to add more time to her schedule at the end of the day when there were no classes. On its face, that is a legitimate reason because the class schedule was such that although flex time would have been convenient for Fosness, it would not have benefited the program. Therefore, the Court finds that the denial of flex time was not an adverse action.

### b. Denials of Professional Development Requests

Fosness concedes that denial of any specific training request does not constitute an adverse action. Instead, she argues that there was an overall shift in the way the MSOP approached her professional development requests. Specifically, that she suddenly had to officially request permission. Critically, Fosness does not present evidence that her Special Teacher colleague was routinely approved for similar trainings that were denied to Fosness or that her requests were handled differently.

Even assuming that there was a shift and that the Defendants began to require official requests, it can hardly be said that requiring someone to make formal requests for

-13-

permission to attend trainings constitutes an injury. After all, making a formal request was the proper process for receiving approval. Moreover, for each training that was denied, Defendants provided a specific reason.

This would appear to be the kind of minor annoyance that does not rise to the level of an adverse action. *See Burlington*, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."). Therefore, the Court finds that requiring official requests and denial of those requests did not constitute adverse actions.

        **c.**      **Constructive Discharge**

Constructive discharge may constitute an adverse action. *Fenney v. Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003). To prove that she was constructively discharged, Fosness must prove that the "working conditions [were] so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Garrison*, 939 F.3d at 943 (citation omitted). The Eighth Circuit has held that constructive discharge requires more proof than experiencing "an unpleasant and unprofessional" working environment because the substantial burden in such a case is "quite high." *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 460 (8th Cir. 2011). Further, Fosness must prove that MSOP "intended to force [her] to quit, or [the MSOP] could reasonably foresee that its actions would cause [her] to quit." *Watson v. Heartland Health Labs., Inc.,* 790 F.3d 856, 863 (8th Cir. 2015). Finally, there is no constructive

discharge if "an employee quits without giving the employer a reasonable chance to resolve [her] claim." *Cosby v. Steak N Shake*, 804 F.3d 1242, 1246 (8th Cir. 2015).

Fosness claims that she was constructively discharged for several reasons, namely, because the MSOP denied her reasonable accommodations; required her to take accrued vacation, sick, or unpaid FMLA leave when she was a few minutes late to work; denied her permission to take working lunches; denied her permission to leave work early to attend university courses; denied her professional development opportunities; refused permission to contribute plants, calculators, or even an ice cream scoop to the program; because she was shunned by her supervisor; and because she was told she could not work until a physician cleared her after suffering a bruised toe. (Pl. Resp. Mem. Opp. Defs.' Mot. Summ. J. at 17–18, Oct. 21, 2022, Docket No. 107.)

It appears that Fosness resigned on her own after she was denied an extended leave to take classes. It is evident that she left because she was not happy that the MSOP denied her the flexibility she sought, but there is no evidence that the MSOP actively pushed her out by assigning her worse responsibilities, cutting her pay, denying promotions, or anything approaching "objectively intolerable working conditions" that constitute constructive discharge. *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 497 (8th Cir. 1996). Fosness points to the ULJ's determinations that she was pushed out, but this is not appropriate for consideration because the MSOP did not participate in the hearing and Minnesota law forbids the use of ULJ's findings in any separate action. Minn. Stat. §

268.105, subd. 5a.  Therefore, the Court finds that Fosness' resignation did not constitute a constructive discharge and thus did not constitute an adverse action.

### 2. Causation

Even if the Court agreed that Fosness has experienced adverse actions, she would still need to show evidence of causation.  But Fosness does not address the issue of causation with regard to any of the alleged retaliatory actions.  She does not point to anywhere in the record to connect the actions from the MSOP with her EEOC charges.

To the extent that Fosness would rely on a temporal connection, most of the alleged actions are months after her EEOC charges were filed and amended.  In particular, there is a span of over two years from the time that Fosness filed her initial EEOC complaint and when she ultimately resigned.  In *Smith v. Allen Health Systems, Inc.,* the Eighth Circuit explained that to establish causation on the basis of temporal proximity between an employer's knowledge of protected activity and an adverse action, the timing "must be very close."  302 F.3d 827, 833 (8th Cir. 2002) (internal quotation marks and citation omitted).  The Eighth Circuit has found causation when proximity was a "matter of weeks," but not so when the interval was of two months between the complaint and the termination.  *Id.*  The Court finds Fosness has not provided sufficient evidence of causation.

### 3. Pretext

Finally, even if the Court found that Fosness has presented a prima facie case of retaliation, Defendants have provided facially legitimate reasons for each of the alleged

adverse actions. Thus, Fosness must present evidence that raises a genuine dispute as to whether the Defendants' reasons are pretextual. The Eighth Circuit has found that

> [t]o withstand summary judgment on [an] ADA retaliation claim, [plaintiff] may demonstrate [a] material issue regarding pretext by (1) indirect evidence showing that [the] employer's proffered explanation is unworthy of credence because it has no basis in fact, or (2) persuading [the] court that [a] prohibited reason likely motivated [the] employer, which is dependent on showing sufficient evidence of intentional retaliation exists for [a] jury to believe plaintiff's allegations . . .

*Lors*, 746 F.3d at 868 (citation omitted).

Fosness argues that Defendants' reasons are "obviously pretextual," but she points to no evidence that Defendants' explanations have no basis in fact or are more likely motivated by another reason. She also does not present evidence that she suffered differing treatment from the other Special Teacher.

Instead, Fosness points to the following as evidence of pretext: that she received negative comments on a performance review, that she was not allowed to bring plants into the library, that she was denied permission to bring a metal ice cream scoop, and that her supervisor failed to respond to an email requesting leave to attend a veteran's conference. This, without more, is not sufficient to challenge the Defendants' reasons as pretext because "unlike evidence establishing the prima facie case, evidence of pretext

and discrimination is viewed in light of the employer's justification." *Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001).

Ultimately, none of the actions that Fosness describes rise above the "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68.

Therefore, the Court finds that Fosness has not presented sufficient evidence of pretext for a jury to rely on and will grant summary judgment on both retaliation claims.

## CONCLUSION

Because Plaintiff has not shown that she requested a flex schedule as part of her accommodation, and because she has not presented a prima facie case or evidence of pretext with regard to her retaliation claims, the Court grants summary judgment to the Defendants on all claims.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment [Docket No. 101] is **GRANTED** as to all claims.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 26, 2023
at Minneapolis, Minnesota.

*John N. Tunheim*
JOHN R. TUNHEIM
United States District Judge